The first case of the morning is United States v. Gunn. Mr. Henderson. Mr. Henderson. Good morning, and may it please the Court. My name is Peter Henderson. I represent Tequila Gunn in this case. Section 3582C1A directs courts to consider only the applicable guidelines policy statement. And it's clear that after the First Step Act of 2018, there is no applicable policy statement. There is a policy statement at Section 1B1.13 that applies to motions filed by the Director of the Bureau of Prisons. But there is no policy statement that applies to motions filed by other people like the defendant. That was the conclusion of the Second Circuit in United States v. Zollo or United States v. Brooker. We think the court should follow that holding. That is the simplest solution to this problem. Mr. Henderson, this is the disembodied voice, Judge Easterbrook. Are there any other appellate decisions that have addressed this issue? Only the Second Circuit has resolved it. The Sixth Circuit in a case in October, I don't recall the name, considered the argument, but ultimately did not decide the issue because there were other grounds on which to affirm. I'd be happy to file that authority with the court, but I'm not aware of any other appellate court that has decided this issue. We have the Sixth Circuit's decision, but if there's nothing else, well, there's nothing else. Yeah, nothing that I could find. So it's the most straightforward look at this. There are other reasons why, even if we assume Section 1B1.13 might control here, that this bit of commentary in Note 1D would not control. It's basically an administrative law problem where we have the Sentencing Commission interpreting its own regulation, its own policy statement. And typically that sort of interpretation would be controlling under our or Seminole Rock deference. But there are a variety of situations in which that deference doesn't apply. We've laid them out in our brief. I think most importantly here is the interpretation of a regulation has to reflect the agency's fair and considered judgment on the subject. And it's clear this doesn't. This reflects fair and considered judgment on a statute that no longer exists. And so under that rationale alone, this isn't controlling. The main point here is under those principles of administrative law that we laid out, the district court was perfectly entitled to decide whether this case presented extraordinary and compelling circumstances. And, you know, the district court might have decided that it doesn't. But we would ask that the court remand so that the district court can make that decision on its own, because it is not bound by this outdated commentary for all the reasons that we've given in the brief. Mr. Henderson, I know the commission hasn't had a quorum, so they've had some challenges. But is there any sense that the commission is attempting to or plans to fix this or modify this policy statement? I tried looking into that in preparation of the argument. I didn't find anything, certainly publicly. I'm sure that there's something behind the scenes, but I am not aware of certainly any public facing statements on what they're trying to do. Mr. Henderson, does Congress sometimes enact legislation that says, in essence, this will not be effective until the relevant agency issues appropriate new regulations? I'm not confident that I have a good answer for that. It didn't do that in the First Step Act. I think Congress, the intention behind this was clearly we're tired of waiting for the director of the Bureau of Prisons to make this determination. We're going to permit defendants to themselves move for compassionate release. So it certainly wasn't premised on any agency action. Obviously, they also didn't amend Section 994. And so when the Sentencing Commission enacts a new policy statement, presumably that will be controlling. Would it be your view, if we were to agree with you, that a district judge's exercise of discretion under the First Step Act would be unreviewable? No, I think it would be reviewable for an abuse of discretion. I think it's a decision that is going to be made in the first instance by the district court and relies on a fact intensive inquiry on particular cases. So I think it would be hard to say as a matter of law that in a particular case, you know, there are or are not extraordinary circumstances. And so I think the appellate review would be for abuse of discretion. But that's certainly a standard of review that has some teeth in it. We're being warned that if we agree with you, district judges will run amok. Well, and obviously we disagreed with that in our reply brief. I will say, so the numbers that I know, at least as of this week, I think we've had about 1,800 of these motions granted across the federal system. This is a count that I get from a federal defender mailing list. There are 150,000 federal inmates. So it's a little over one percent. This is not sort of releasing the prison gates. This is district judges in individual cases, thoughtfully considering whether a particular defendant's vulnerabilities, particular defendant's circumstance warrant compassionate release. And my guess is, Mr. Henderson, that out of those 1,800 motions granted, the majority, probably somewhere in the 90 percent are COVID specific. So this one percent is probably not reflective of when we return to some sense of normalcy, what the numbers will look like. That's my sense as well. And, of course, it doesn't take into account the tens of thousands, if not more, that have been rejected. I mean, this is not district courts are just granting everything. But your mention of the pandemic is spot on. Congress, this is supposed to be a safety valve where if circumstances change that we couldn't see it sentencing district judges now are entitled on a defendant's motion to adjust the sentence. And so we'd ask that the court remands of the judgment date can make that determination in the first instance. I'll save the remainder of my time for rebuttal. Certainly, Mr. Henderson. Mr. Hanna. Thank you, Your Honors. Good morning. I want to address immediately that Mr. Henderson's statement that this is supposed to be a safety valve. The First Step Act changed sentence reduction statute in only one way that's relevant to this appeal. And that is it changed the procedure for which a defendant could move for compassionate release, granting a direct file, allowing the defendant to direct file himself. So now after the First Step Act, inmates can direct file for compassionate release in the district court. This was entirely a procedural in nature change and nowhere in the First Step Act that Congress grant the district court the authority to define what the substantive authority may be for compassionate release. And under that parameter, the First Step Act itself. Mr. Hanna, I'm puzzled by that statement. The statute says that compassionate relief is permissible in extraordinary circumstances. Why isn't that the governing rule? It is the governing rule, Your Honor, but it's subject to what the commission itself determines what are going to be the parameters. The statute says that the decision has to be consistent with any policy statement of the commission, any applicable policy statement of the commission. And if there is no applicable policy statement, then anything is consistent with nothing. Right. We're left with the statutory substantive standard. That's what the Second Circuit held. Right. Which the government believes was incorrect, Your Honor. And there's a petition for a hearing on Bonk that's been filed in that case. I set out in the 28-J letter the basis for the government's position that that was incorrect reasoning. Let me tell you what my problem with the analysis in your 28-J letter is. You seem to read the statute as saying that release is permissible only when authorized by a policy statement. But what the statute says is it has to be consistent with an applicable policy statement. That's what led me to wonder whether when there is no applicable policy statement, there is any constraint because anything is consistent with nothing. That's the basic problem. And the government's position, Your Honor, is that there is a applicable policy statement. There are certain parts of 1B1.3 that are no longer operable under the changes to the First Step Act. But that doesn't throw out the application of that entirely. And as we see, the district courts across the country have continued to apply the standards that are set forth in that, even with regard to motions that are filed by defendants. Well, I think district courts across the country have gone both ways, Mr. Hanna. That's correct. So you can't suggest, and maybe you weren't suggesting it, but suggesting that all district courts are still applying it because even in your district and the Northern District of Illinois, district courts are on both sides of the fence. That is correct, Your Honor. And I think that's set forth in a very detailed analysis in that Rollins case that was mentioned earlier. I believe that was the Sixth Circuit. That never really answers that question, but lays out the division or the dividing line as to which way the courts are going on these. But the government's position is that you can carve out those portions, and there are only a few of them that do not seem to apply given the enactment of the First Step Act. That is the first sentence of 1B1.3, which says, upon motion of the Director of Bureau of Prisons, and then Comment Note 4 and 5 have references to the motions or the determination by the Bureau of Prisons, but the rest of the policy statement is still- But on what basis should we carve that out? The Sentencing Commission hasn't suggested we should carve that out. Congress hasn't suggested we should carve that out. The statement reads, as it does on motion of the Bureau of Prisons, on what basis should we just ignore that introductory language? Because to do so would find direct contravention with 994T, Your Honor, which leads it to the Commission to describe what should be considered extraordinary and compelling circumstances for a sentence reduction and give the criteria for those specific examples. So if we don't have- If the Commission offered that, would it be binding or would it be advisory? It would be binding, Your Honor, as we hold that the 1B1.3 is binding as it stands, including the application notes, because as pointed out in the dependence brief, the statute or the applicable guideline, rather, 1B1.3 simply parrots the language of the statute, but it doesn't get into the- until you get to the commentary and the application notes, where the Commission has given us something with some teeth to describe what the parameters are. So on that basis, I didn't see really- maybe I missed it, but a direct response to defendants' arguments against our deference to a commentary to a policy statement that addresses a statute that's been amended in important ways since then. So, Your Honor, our response was that under the Dillon case, the Commission's policy statements are binding under the district courts. And further, this court, Seventh Circuit, has held that the guideline application notes are part of the guidelines themselves. They're not merely commentary on them. And that further under Stenson, unless there is a conflict of the text of the statute, and there is absolutely no textual conflict in this case, the only way to resolve- the only way to find conflict is if you assume that Congress's procedural changes were intended to have substantive benefits, which is not the case here, because as I indicated at the opening here, the only change that was made to the statute in 3582 was allowing a defendant to direct file. Congress did not expand upon the categories or definition of what could be extraordinary and compelling circumstances, and it could have done that. In the absence of some specific and deliberate indication of what those parameters might be or what Congress had in mind, it's not for this court or any other court to fill that void or that vacuum and determine what extraordinary and compelling circumstances might be. And that leads us to kind of this list of undermining finality in sentencing, the unraveling of the 2255 parameters, the undermining of mandatory minimum sentences, sentencing disparity, all of the things that the Sentencing Reform Act was meant to address, becoming problems when there are absolutely no parameters as to what extraordinary and compelling means, and it is only up to the district courts to divine that. Is it your view that that would be an unreviewable exercise of discretion? I think, Judge Hamilton, that is something to be concerned of. What would this court, what would the Seventh Circuit, what are the confines, even under an abuse of discretion standard, to determine whether a court was outside of the bounds? Just how worried do you think Congress is about Article 3 judges, it has confirmed, running amok with this authority? Well, I think Congress should be concerned about discrepancy, not necessarily all judges or a small group of judges or whatever the percentage may be that may find that. One fix under your proposal, under your theory, at least as I understand it, one effective fix here would be to let the sentencing commission have a quorum again and let it take action to write a new policy guideline, right? That is correct, Your Honor. And in doing so, without further direction of Congress, the government's position is that the only thing the commission would be doing at this point is changing that language, that prefatory language, upon motion of the Director of Bureau of Prisons and maybe addressing application note 4, because those are the only two portions of this entire policy statement that would appear to be not consistent now that the First Step Act was passed in 2018. Mr. Hanna, district courts exercise their discretion all the time in sentencing issues for motions for downward departure, motions for deviations. It's something they do routinely. Why do you think they can't do it in this circumstance? Because of that list that I was discussing before, Your Honor, the ability to circumvent or end-run 2255 parameters, habeas, and in this instance, by the way— But the courts are well aware of those parameters. Why is it that you think essentially the Bureau of Prisons is in a better position to make that determination or that district courts can't do that when they routinely exercise their discretion? My answer to that would be that they can exercise their discretion when they are given that opportunity with a clear intention by Congress to grant that authority to them. But it is Congress that's in the position of determining the penalties for particular offenses, whether offenses are retroactive application or not, and that just simply has not been granted in this particular First Step Act. That's the amount of time, Your Honor. Thank you, Mr. Hanna. Anything further, Mr. Henderson? I just wanted to pick up on one point that Judge Easterbrook, you made, which is that the statute requires that a reduction be consistent with a policy statement. It doesn't depend on a policy statement. For the first 20 years of this statute, there was no policy statement. The Sentencing Commission enacted Section 1B1.13 in about 2006. But after the First Step Act, again, we don't have an applicable policy statement for this situation. The statute makes it clear that the court can nonetheless grant relief, even in the absence of that policy statement. Unless there are other questions, I will give back the remainder of my time. Thank you very much, Mr. Henderson. Thank you, Your Honor.